UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

GLOBAL TITLE, LLC, d/b/a GLOBAL
TITLE SERVICES

        Third Party Plaintiff

        v.                Case No. 3:09-cv-550-HEL-MHL

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY

        Third Party Defendant

### ST. PAUL FIRE AND MARINE INSURANCE COMPANY'S RESPONSE MEMORANDUM IN OPPOSITION TO GLOBAL TITLE'S AND FIRST TENNESSEE'S OBJECTIONS TO MAGISTRATE'S REPORT AND RECOMMENDATIONS

Third Party Defendant and Counterplaintiff/Cross-plaintiff, St. Paul Fire and Marine Insurance Company ("St. Paul"), by counsel, pursuant to Federal Rule of Civil Procedure 72(b)(2), submits this response in opposition to the objections filed by Global Title LLC d/b/a Global Title Services' ("Global") and First Tennessee Bank National Association ("First Tennessee") with respect to the Report and Recommendations entered by United States Magistrate Judge M. Hannah Lauck on February 18, 2011 (the "Report").

## I.   INTRODUCTION

In her Report, Magistrate Judge Lauck comprehensively analyzed the legal issue of whether St. Paul had or has any duty to defend or indemnify Global against a lawsuit premised on Global's alleged transfer of First Tennessee's funds to a third party. Magistrate Judge Lauck correctly found that Global's "transfer to Financial Mortgage could not constitute anything but an unauthorized act that deprived First Tennessee of the use of its funds…", and that the "Handling of funds" exclusion at issue in this case clearly applied to bar coverage. The

Magistrate Judge therefore appropriately recommended that the Court find that First Tennessee's claims against Global do not trigger St. Paul's duty to defend or indemnify Global.

In its Amended Intervening Complaint ("Intervening Complaint"), First Tennessee alleges that Global – a full-service title agency – would receive funds from First Tennessee prior to the closing of certain loans, and that Global was supposed to hold the funds in trust and then distribute them as directed upon closing. First Tennessee further alleges that it transferred funds to Global in anticipation of funding three loans. However, when Global was informed that the three loans would not close, First Tennessee alleges that Global improperly transferred the loan funds to a third-party (Financial Mortgage) rather than returning the funds to their owner, First Tennessee, as instructed.

First Tennessee's allegations, if proven, would demonstrate an unauthorized act by Global – the transfer of funds to someone other than the funds' true owner without the owner's authorization – that deprived First Tennessee of the use of its funds. As the Real Estate Professional Services Protection Policy that St. Paul issued to Global (the "Policy") excludes coverage for loss that results from that conduct, the Policy provides no coverage for the Intervening Complaint.

For these reasons, and contrary to the objections of Global and First Tennessee, the Report is fully supported by the facts and the law. The Magistrate Judge's recommendations – that the Court grant St. Paul's Motion for Summary Judgment, deny Global's and First Tennessee's Motions for Summary Judgment, dismiss Global's claim for declaratory judgment, and enter judgment in St. Paul's favor – should therefore be accepted and adopted.

## II. ARGUMENT

The Policy does not provide coverage for the Intervening Complaint because the Policy's "Handling of funds" exclusion applies to all loss alleged.[1] First Tennessee alleges loss that, if proven, unquestionably results from Global's unauthorized acts that deprived First Tennessee of the use of its funds. A comparison of the allegations of the Intervening Complaint and the Policy's terms – a comparison that Virginia law requires in determining the duty to defend – demonstrates that the loss, if proven, would not fall within the Policy's coverage.

### A. Duty to Defend Standards

When analyzing insurance policy language, Virginia courts give the contract language its plain and ordinary meaning and enforce the policy as written. *Partnership Umbrella, Inc. v. Federal Ins. Co.*, 260 Va. 123, 133, 530 S.E.2d 154, 160 (Va., 2000). In other words, "[c]ourts interpret insurance policies, like other contracts, in accordance with the intention of the parties gleaned from the words they have used in the documents." *Floyd v. Northern Neck Ins. Co.*, 245 Va. 153, 158, 427 S.E.2d 193, 196 (Va., 1993).

In determining whether an insurer has a duty to defend its policyholder against a claim or suit, courts applying Virginia law compare the allegations of the complaint to the terms of the insurance policy. *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.,* 566 F.3d 150, 155-156 (4th Cir. (Va.), 2009); *Penn-America Ins. Co. v. Mapp,* 461 F. Supp. 2d 442, 456 (E.D.Va., 2006) ("'an insurer's duty to defend is determined solely by the allegations in the pleading…'"). Under Virginia law, an insurer's duty to defend arises when the complaint against the insured alleges facts and circumstances, some of which, if proved, fall within the risk covered by the policy." *Bohreer v. Erie Ins. Group,* 475 F. Supp. 2d 578, 584 (E.D. Va., 2007).

---

[1] St. Paul's arguments, and the Report's analysis, apply equally to the suit that First Tennessee originally filed against Global, then voluntarily dismissed, under docket number 09-cv-005500-RLW.

### B.     First Tennessee's Objections Have No Merit[2]

Because the Policy's "Handling of funds" exclusion applies, the facts alleged in the Intervening Complaint, if proven, simply do not fall within the Policy's coverage. Therefore, under Virginia law, St. Paul can have no duty to defend Global against First Tennessee's claims. First Tennessee's objections have no merit.

#### 1.     The Plain Wording of the Exclusion Demonstrates that the Alleged Loss is not Covered (Response to First Tennessee's First Objection)

The Policy's "Handling of funds" exclusion provides as follows:

> **Handling of funds.** We won't cover loss that results from any of the following:
>
> • Any unauthorized act committed by any protected person that deprives an owner of the use of its fund.
> • Any unauthorized use of funds by any protected person.
> • Mixing client funds with any protected person's funds.
> • The failure of any protected person to properly account for funds.

Pursuant to the plain language of this exclusion, the Policy does not cover the loss alleged in the Intervening Complaint. First Tennessee alleges in the Intervening Complaint that, in connection with the performance of Global's duties as a full-service title insurance agency, Global receives and holds client funds in trust and then distributes the funds as directed upon closing. First Tennessee further alleges that in September 2007, it transferred funds to Global in anticipation of funding three loans. Global was subsequently informed that the three loans would not close. However, instead of returning the funds to First Tennessee, as instructed, Global allegedly transferred the loan funds to another entity. The loss, therefore, allegedly

---

[2] First Tennessee submitted objections dated March 4, 2011, which are addressed in this Section II B. On March 3, 2011, First Tennessee also filed a Motion to Adopt and Conform Global's Objections, which were filed on March 3, 2011. St. Paul addresses Global's objections separately, in Section II C of this Memorandum. To the extent that First Tennessee adopts or joins in Global's objections, St. Paul's responses to Global's objections will also serve as its responses to First Tennessee's separate "adopted" objections.

results from Global's unauthorized acts – transfer of the funds to an entity other than First Tennessee – that deprived First Tennessee of the use of its funds.

First Tennessee urged the Court to consider – in analyzing the duty to defend – certain exhibits attached to First Tennessee's complaints against Global. Specifically, First Tennessee previously referred the Court to certain "Supplemental Closing Instructions" included within Group Exhibit A to First Tennessee's original complaint and the Intervening Complaint. (Doc 33, Ex. A). These Supplemental Closing Instructions provide as follows, in pertinent part, with respect to Global's authority:

> 2. First Tennessee Bank (the "Bank"), is the warehouse lender for this transaction. The Bank will have a first priority security interest in the mortgage loan. ***If the mortgage loan does not close, you are to*** either 1) return the unused cashier's check to Financial Mortgage, Inc. or 2) ***return the funds via wire transfer directly to the Bank.*** If necessary, return wire instructions may be obtained from the Bank's manager of warehouse operations by calling 888-207-0222.

(Doc. 33, Ex. A) (emphasis added)

As the Magistrate Judge notes in the Report, the Fourth Circuit has held that in determining the duty to defend, a court should not consider documents attached to the underlying complaint. Report, p. 18; *CACI Int'l*, 566 F.3d at 156. Nevertheless, the Report addressed the exhibits to First Tennessee's complaints, and those exhibits actually provide further evidence that the Policy's "Handling of funds" exclusion applies here. According to the Supplemental Closing Instructions, Global was authorized to do <u>only</u> <u>one</u> <u>thing</u> with "funds" if a mortgage loan did not close – "***return the funds by wire transfer directly to the Bank***." Any other action Global took with respect to "funds" had to constitute "an unauthorized act." First Tennessee certainly alleges in the Intervening Complaint that Global took action other than the one and only

5

action Global was authorized to take under the circumstances. These allegations of authorized acts clearly trigger the Policy's "Handling of funds" exclusion.

First Tennessee's reliance on *Copp v. Nationwide Mut. Ins. Co.*, 692 S.E.2d 220 (Va., 2010) is misplaced. In *Copp*, the Supreme Court of Virginia addressed a situation that Virginia courts had not previously faced – coverage for an alleged intentional act where the relevant policy exclusion included an exception for acts that were in self-defense. The court would not apply the intentional acts exclusion in that case because it was possible that the exclusion's self-defense exception could be triggered under the facts. 692 S.E.2d at 225. In other words, the alleged conduct there could have been intentional (triggering the policy exclusion) <u>and</u> in self-defense (triggering the exclusion's exception). The exclusion at issue here, though, is in no way similar to the exclusion the *Copp* court considered. The "Handling of funds" exclusion includes no exception for conduct the insured believed was authorized by some party other than the funds' owner, although First Tennessee apparently wishes to write this exception into the exclusion. The exclusion applies when the loss-causing act was unauthorized. In the absence of some exception to a policy exclusion, which the *Copp* court believed required consideration of the insured's self-defense assertion, *Copp* simply is not applicable here.

Finally, First Tennessee's argument regarding "apparent authority" is also without support. Regardless of whether Global believed that Financial Mortgage had apparent authority to act on behalf of First Tennessee, and provided Global with instruction to transfer the escrow funds to Financial Mortgage, Global's liability would still be contingent on a finding that Global was ultimately <u>not</u> authorized to transfer funds to Financial Mortgage. Global's apparent defense theory, though, does not establish coverage or create a duty to defend a non-covered loss. The question here is whether Global can be found liable for a covered loss, not whether it can avoid

liability altogether. Once again, Global's liability, if any, will be premised upon a lack of actual authority from the funds' true owner, i.e. <u>an</u> <u>unauthorized</u> <u>act</u>. The Magistrate Judge was correct in reaching this conclusion.

> 2. **First Tennessee's "Illusory Coverage" Argument Ignores the Many Types of Covered Loss Unaffected by the Exclusion (Response to First Tennessee's Second Objection)**

First Tennessee's second objection - based on the mistaken premise that the "Handling of funds" exclusion somehow eliminates all coverage for Global – is also without merit.

As the Report correctly notes, the Policy provides coverage to Global for a wide variety of "wrongful acts" that a protected person under the Policy may commit, separate and apart from an unauthorized transfer of funds. Global is insured for services performed in the capacities of title agent, title searcher, abstracter, closing agent and escrow agent. The vast majority of the services in these various capacities – such as preparation of title documents, searching title history, abstracting title, processing closing documentation, ensuring proper execution and notarization, recording mortgages and other documents, and providing executed documents to proper parties - do not involve the handling of funds, at all. Moreover, the exclusion does not in any way eliminate all coverage in the capacity of "escrow agent." Pursuant to the Policy's definitions "escrow agent" and "escrow," an escrow agent handles escrows of property, deeds and bonds, as well as money. The exclusion in no way limits coverage for an escrow agent's services in handling three of the four identified types of escrow. The Policy also lists multiple categories of "personal injury offenses" that fall within the Policy's definition of "wrongful act," and a title, closing or escrow agent may commit any of these wrongful acts without necessarily triggering the "Handling of funds" exclusion.[3] Also, an escrow agent may face claims arising

---

[3] These personal injury offenses include, among others, libel, slander, business disparagement, invasion of privacy rights, malicious prosecution, and false arrest, detention or imprisonment.

from errors, omissions or negligent acts in its communications or conduct *before* receiving funds or *after* disbursing them, and the exclusion may not come into play in those situations.

Indeed, were this Court to consider the contents of the Supplemental Closing Instructions, as First Tennessee requested, those instructions identify various services that Global was to perform in the very transactions at issue here, and those services did not involve the handling of funds. For example, the Supplemental Closing Instructions state that Global was to "hold any documents pertaining to the mortgage loan… and to transmit same [sic] Financial Mortgage, Inc. and to no other address except pursuant to written instructions delivered to you by bank." (Supp. Closing Inst., § II (3)). The Supplemental Closing Instructions further required Global to "submit the mortgage or deed of trust to the proper recording agent for recording…". (*Id.*) Indeed, proper handling of loan and mortgage documents and proper and timely recording of such documents are critical aspects of a title/closing agent's services, and negligent performance of those services often leads to claims against the agent. An error in the performance of any of those services would not necessarily invoke the "Handling of funds" exclusion.

First Tennessee's reliance on *Transcontinental Ins. Co. v. Caliber One Indem. Co.*, 367 F.Supp.2d 994 (E.D.Va., 2005), is also misplaced. The professional liability policy at issue in *Transcontinental* was to insure for services provided by a sprinkler company. The court rejected the insurer's attempt to disclaim coverage based on a policy exclusion that would have had the effect of eliminating practically all coverage for errors in sprinkler maintenance and installation, which was the very focus of the insured's business. As more fully discussed above, application of the "Handling of funds" exclusion here would not produce the result that Global "in fact purchased no professional liability coverage whatsoever," which was the result that the *Transcontinental* court sought to avoid. 367 F.Supp.2d at 1007. Unlike the sprinkler company

in *Transcontinental*, a full-service title and closing agent like Global may be subject to a wide variety of professional liability claims to which the exclusion here obviously would not apply.

### C. Global's Objections Have No Merit

Global's objections generally lack support for the same reasons discussed above with regard to First Tennessee's objections. St. Paul therefore responds to Global's objections, in general, by incorporating its above response to First Tennessee's objections. Additionally, in response to Global's separately stated objections (paragraphs 1 through 11 of Global's Objections), St. Paul responds below in corresponding paragraphs.

#### 1. Global's Objection to Report, p. 2, § I.A

Global now argues that it was not a party to the Mortgage Warehouse Loan and Security Agreement ("Agreement") between First Tennessee and Financial Mortgage. In the Report, the Magistrate Judge does not find or imply that Global *is* a party to the Agreement. Rather, she merely recites the allegations of the Intervening Complaint, where First Tennessee specifically alleged that it entered into the Agreement with Financial Mortgage. Global's first objection therefore makes no sense.[4]

#### 2. Global's Objection to Report, p. 8, § III.A

Global references case law with respect to construction of ambiguities in insurance policies. Such authorities are of no consequence here, where the Report correctly found the language of the Policy unambiguous.

---

[4] It is ironic that Global now attempts to distance itself from the Agreement, given that Global affirmatively advocated that the Court should consider the contents of the Agreement. Indeed, Global's request that the Court consider the Agreement was one of the reasons the Magistrate Judge recommended re-briefing the motions after they were fully briefed and argued.

### 3. Global's Objection to Report, p. 12, § III.B.1

Global's third objection ignores the reality that its liability to First Tennessee must be premised on a determination that First Tennessee did not authorize the transfer of funds to Financial Mortgage.

### 4. Global's Objection to Report, p. 12, § III.B.1, 2nd Paragraph

Global's fourth objection is mistakenly premised on Global's view of the issue to be decided in First Tennessee's case against Global. Regardless of whether Global owed a duty to First Tennessee to determine ownership of the funds at issue, Global's liability, if any, will be for loss that results from an unauthorized act. That potential liability triggers the "Handling of funds" exclusion.

### 5. Global's Objection to Report, p. 14, § III.C.2

Once again, Global's fifth objection is based on the mistaken premise that Global could be held liable for a transfer of funds to Financial Mortgage that First Tennessee authorized. First Tennessee clearly alleges in the Intervening Complaint that transfer of funds to anyone other than First Tennessee was not pursuant to instructions. Therefore, such a transfer was not authorized by First Tennessee, the funds' owner.

### 6. Global's Objection to Report, p. 15, § III.C.2

Global's sixth objection once again makes no sense. Virginia law is clear that a policy term is ambiguous only when, in context, it is capable of more than one *reasonable* meaning. *Resource Bankshares Corp. v. St. Paul Mercury Ins. Co.*, 407 F.3d 631, 636 (4th Cir (Va.), 2005) (emphasis added). As with other contracts, when interpreting a policy, courts must not strain to find ambiguities. *Id*. In the course of briefing the motions, neither Global nor First Tennessee offered any reasonable construction of the exclusionary language, and the Magistrate Judge was correct in finding it unambiguous.

### 7. Global's Objection to Report, p. 16, § III.C.3.a

Neither the allegations of the Intervening Complaint, nor the Agreement referred to in the Intervening Complaint, indicate in any way that Financial Mortgage was the owner of the funds or had a right to their use. To the contrary, First Tennessee alleged that the funds belonged to First Tennessee, and the Agreement (to the extent such an extrinsic document could be considered on the issue of the duty to defend) further demonstrates that the funds were the property of First Tennessee.

### 8. Global's Objection to Report, p. 17, § III.C.3.b

Global's eighth objection appears to be a rehashing of its fourth objection, to which St. Paul has previously responded.

### 9. Global's Objection to Report, p. 20, § III.C.4.b

Global once again provides an incorrect and unsupported description of the Agreement. The Agreement did not provide Financial Mortgage any right to use First Tennessee's funds if the subject loans did not close. Moreover, Global's recognition that the Agreement post-dates the transactions at issue in this case, as the Report points out, demonstrates that the Agreement has no relevance whatsoever. Clearly, Global should have never insisted that the Court consider the contents of the Agreement.

### 10. Global's Objection to Report, p. 20, § III.C.4.c

See St. Paul's Response to Global's fourth objection.

### 11. Global's "Negligence" Argument

Global incorrectly asserts that the Policy's "Handling of funds" exclusion does not apply if Global's liability is based on negligence. As the Report correctly notes, the exclusion includes no such limitation. It does not distinguish between negligent or intentional conduct, nor should it make such a distinction. The exclusion addresses loss that results from unauthorized acts, which

can certainly encompass both negligent and intentional acts. Moreover, and as the Report further notes, the Policy includes other exclusions that clearly limit their application to intentional, fraudulent or knowing conduct. (Report, p. 15, citing Policy exclusions for (1) intentional breach of title agent authority and (2) fraudulent acts.) Where a distinction between intentional and negligent acts is warranted, the Policy specifically makes that distinction. The "Handling of funds" exclusion makes no such distinction, but applies to loss that results from "*any* unauthorized act" that deprives the owner of the use of its funds.

### III. CONCLUSION

For the reasons set forth above, the Policy affords no coverage for the Intervening Complaint, and St. Paul has no duty to defend or indemnify Global. Accordingly, and as the Magistrate Judge Lauck recommends, Global's and First Tennessee's motions should be denied, and the Court should enter summary judgment in favor of St. Paul Fire and Marine Insurance Company on its Third Amended Counterclaim and Crossclaim and the declaratory relief claim asserted in Global's Second Amended Third Party Complaint.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY

By_____/s/_____
    Bruin S. Richardson, III
    Virginia Bar Number: 30206
    Melissa Ann Conner
    Virginia Bar Number: 48609
    Attorneys for St. Paul Fire and Marine Insurance Company
    LeClair Ryan
    950 East Byrd Street, 8th Floor
    Richmond, Virginia 23219
    Phone: 804-783-2003
    Fax: 804-783-2294
    Bruin.Richardson@leclairryan.com

Melissa.Conner@leclairryan.com

and

Christopher J. Bannon
Illinois Bar Number: 6196298
Attorney for St. Paul Fire and Marine
Insurance Company
Aronberg Goldgehn Davis & Garmisa
330 North Wabash Avenue
Suite 1700
Chicago, Illinois 60611
Phone: 312-828-9600
Fax: 312-828-9635
cbannon@agdglaw.com

13

Case 3:09-cv-00550-HEH -MHL   Document 88   Filed 03/17/11   Page 14 of 15 PageID# 843

## CERTIFICATE OF SERVICE

I hereby certify that on the 17th day of March, 2010, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Paul P. Vangellow
Attorney for Global Title, LLC
Paul P. Vangellow, PC
6109A Arlington Boulevard
Falls Church, Virginia 22044
Phone: 703.241.0506
Fax: 703.241.0886
paul.vangello@verizon.net

Michael Paul Falzone
Attorney for First Tennessee Bank National Association
Hirschler Fleischer PC
2100 E Cary St
PO Box 500
Richmond, VA 23218-0500
804-771-9560
mfalzone@hf-law.com

Clarence Andre Wilbon
Attorney for First Tennessee Bank National Association
Bass, Berry & Sims, PLC
100 Peabody Place, Suite 900
Memphis, TN 38103
(901) 543-5927
ewilbon@bassberry.com

Rebecca Tauer Christoff
Attorney for First Tennessee Bank National Association
Bass, Berry & Sims, PLC
100 Peabody Place, Suite 900
Memphis, TN 38103
(901) 543-5939
achristoff@bassberry.com

                                                        /s/
                                            Melissa Ann Conner
                                            VSB No. 48609

Attorney for St. Paul Fire and Marine Insurance Company
LeClairRyan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street, 8th Floor
Post Office Box 2499
Richmond, Virginia 23219
Telephone: (804) 916-7174
Facsimile: (804) 916-7274
Melissa.Conner@leclairryan.com

1086222v2

15