# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

GLOBAL TITLE, LLC, d/b/a )
GLOBAL TITLE SERVICES, )
      )
  Third-Party Plaintiff/Counter-Defendant/ )
  Intervening Defendant, )
      )
v. ) Civil Action No. 3:09CV550–HEH
      )
ST. PAUL FIRE & MARINE )
INSURANCE COMPANY, )
      )
  Third-Party Defendant/Counter-Plaintiff/ )
  Cross-Plaintiff, )
      )
and )
      )
FIRST TENNESSEE BANK )
NATIONAL ASSOCIATION, )
      )
  Intervening Plaintiff/Cross-Defendant. )

## MEMORANDUM OPINION

This action for declaratory judgment is presently before the Court on the Report

and Recommendation of the Magistrate Judge ("R&R") concerning the parties' cross

motions for summary judgment. For the reasons stated below, the R&R will be adopted;

St. Paul Fire & Marine Insurance Company ("St. Paul")'s Motion for Summary Judgment

will be granted; Global Title, LLC ("Global")'s Motion for Summary Judgment will be

denied; and First Tennessee Bank National Association ("First Tennessee")'s motion for

summary judgment will be denied. Global's claim for declaratory relief in its Second

Amended Third Party Complaint will be dismissed with prejudice, and judgment will be

entered in St. Paul's favor on all counts in St. Paul's Third Amended Counterclaim and Crossclaim for Declaratory Judgment.

## I.

This insurance-coverage dispute stems from a mortgage-loan transaction and consequent litigation involving First Tennessee, a national banking association; Financial Mortgage, Inc. ("FMI"), a mortgage-loan lender; and Global, a full-service title insurance and closing company. The material facts are not in dispute.

On April 8, 2009, First Tennessee filed a multi-million dollar lawsuit ("the Underlying Litigation") against Global to recover funds which Global allegedly wrongfully transferred to FMI. First Tennessee alleged that it (First Tennessee) had agreed to advance monies to FMI to fund certain FMI-originated loans for residential real property.[1] Pursuant to that agreement, First Tennessee would allegedly transfer funds to Global, the closing agent, before the FMI-originated loans closed. As agent, Global was to hold the funds in trust and distribute the funds as directed upon closing.

First Tennessee alleged that it transferred over $2.5 million to Global in September 2007 in anticipation of funding three such loans.[2] Thereafter, FMI's President and Chief Executive Officer, Vijay Taneja ("Taneja"), advised Global that the loans would not close. Rather than remitting the funds to First Tennessee, however, Global

---

[1] Effective October 1, 2007, the First Tennessee and FMI entered into a Mortgage Warehouse Loan and Security Agreement which confirmed the terms and conditions of the line of credit and granted First Tennessee a first lien security interest in each mortgage loan. (*See* Mem. Supp. Global's Mot. Summ. J. Ex. 1.)

[2] On September 11, 2007, First Tennessee made transfers of $989,619.90 and $980,152.65 to fund two separate loans. In anticipation of funding a third loan, First Tennessee transferred another $579,919.79 to Global on September 28, 2007.

transferred the funds to FMI. Taneja absconded with the funds.[3] First Tennessee, who

has been unable to recover the $2.5 million, alleged that Global was liable for the loss on

theories of negligence, breach of fiduciary duty, conspiracy to commit fraud, and

conversion.

During this time, Global maintained through St. Paul a Professional Liability

Policy ("the Policy"). The Policy provided insurance for certain acts and events in

connection with several real estate professional services—namely, services performed as

title agent, title searcher, abstracter, closing agent, or escrow agent. (Policy, at SP-

00016.)[4] The Policy provided that St. Paul would "pay amounts any protected person is

legally required to pay as damages for covered loss . . . caused by a wrongful act

committed on or after any retroactive date that applies and before the ending date of this

agreement." (*Id.* at SP-00021.) The Policy defined "wrongful act" as "any: negligent act

error, or omission; or personal injury offense." (*Id.* at SP-00022.) The Policy further

provided that St. Paul had "the right and duty to defend any protected person against a

claim or suit for loss covered by this agreement." (*Id.*) In light of First Tennessee's

claim that Global had negligently transferred First Tennessee's funds to FMI, Global

requested that St. Paul defend and indemnify Global in the Underlying Litigation.[5]

---

[3] Taneja was subsequently charged with and pleaded guilty to one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). (*See* Plea Agreement, United States v. Taneja, No. 1:08CR428 (E.D. Va. Nov. 13, 2008).)

[4] The Policy was attached as Exhibit A to First Tennessee's memorandum in support of its motion for summary judgment. (*See* Dk. No. 75 Ex. A [hereinafter Policy].) The Court cites pages of the Policy by the "SP" pagination found in the lower-right corner of each Policy page.

[5] It is undisputed that Global's members and managers were "protected person[s]" under the Policy. (*See* SP-00022 (providing that members and managers of an LLC are "protected person[s]").)

3

On April 28, 2009, St. Paul notified Global that it was declining coverage. St. Paul based its decision on a "Handling of funds" exclusion in the Policy, which provided that St. Paul would not "cover loss that results from . . . [a]ny unauthorized act committed by any protected person that deprives an owner of the use of its funds . . . ." (Policy, at SP-00028–SP-00029.)[6] The term "unauthorized" is not defined in the Policy. In St. Paul's view, Global's transfer to FMI, as alleged by First Tennessee, constituted an "unauthorized act[] which deprived First Tennessee of the use of its funds" within the meaning of this exclusion. (St. Paul Mem. Supp. Mot. Summ. J. 7.) Global disagrees.

On September 2, 2009, Global filed this action alleging that St. Paul's denial of coverage constituted a breach of contract and bad-faith refusal to defend.[7] Global seeks a declaratory judgment that St. Paul has a duty to defend and indemnify Global in connection with the Underlying Litigation. First Tennessee, whose claims against Global in the Underlying Litigation were dismissed without prejudice pursuant to a Joint Stipulation of Dismissal on December 7, 2009, sought and was granted leave to

---

[6] The "Handling of funds" exclusion also exempts from coverage losses resulting from "any unauthorized use of funds by any protected persons," and losses that result from "[t]he failure of any protected person to properly account for funds." (Policy, at SP-00028–SP-00029.) In its motion for summary judgment, St. Paul argued that these exclusions, like the "unauthorized act" provision, apply and therefore relieve St. Paul of the duty to defend. (*See* St. Paul Mem. Supp. Mot. Summ. J. 2.) The magistrate declined to reach this argument because she found that the conduct alleged in the Underlying Litigation and Intervening Complaint fell within the "unauthorized act" prong of the "Handling of funds" exclusion. (R&R 10 n.5.) This Court similarly limits its analysis to the "unauthorized act" provision of the exclusion.

[7] Global sought leave to file a third-party complaint against St. Paul in First Tennessee's suit against Global on August 20, 2009. *See* Mot. Leave File Third-Party Compl., First Tenn. Bank Nat'l Ass'n v. Global Title, LLC, No. 3:09CV208 (E.D. Va. Aug. 20, 2009). The Honorable Robert E. Payne granted Global leave to file a third-party complaint against St. Paul, but ordered that the complaint be severed and filed separately. *See* Order, First Tenn. Bank Nat'l Ass'n v. Global Title, LLC, No. 3:09CV208 (E.D. Va. Sept. 2, 2009), ECF No. 26.

intervene. On February 26, 2010, First Tennessee filed a one-count Amended

Intervening Complaint ("Intervening Complaint"), alleging that Global breached its duty

to protect First Tennessee's funds "when it negligently transferred $2.5 million of First

Tennessee's money to [FMI]." (Am. Intervening Compl. ¶ 12.)

On May 6, 2010, St. Paul filed a counterclaim and crossclaim against Global and

First Tennessee, respectively. St. Paul seeks a declaratory judgment that it has no duty to

defend or indemnify Global in connection with the Underlying Litigation or First

Tennessee's Intervening Complaint.

Global and St. Paul filed cross motions for summary judgment on May 24, 2010.

The Honorable Richard L. Williams referred the motions to Magistrate Judge M. Hannah

Lauck pursuant to 28 U.S.C. § 636(b)(1). Following oral argument on November 9,

2010, both motions were denied without prejudice.[8]

On January 6, 2011, First Tennessee, Global, and St. Paul filed new motions for

summary judgment. Magistrate Judge Lauck heard oral argument on February 9, 2011.

In a R&R entered on February 18, 2011, Judge Lauck recommended that St. Paul's

Motion for Summary Judgment be granted and that Global and First Tennessee's motions

be denied.[9] Global Title and First Tennessee object to the R&R on several grounds.[10]

---

[8] At oral argument, Global and First Tennessee raised arguments not previously addressed in their briefs. The Court denied the motions without prejudice and set a new briefing schedule.
[9] The case was reassigned to this Court on March 14, 2010, after the parties filed their objections to the R&R.
[10] Global's Motion to Adopt and Conform the Objections to the Magistrate's Report and Recommendation to be Filed by First Tennessee Bank National Association will be granted. Accordingly, the Court will read First Tennessee Bank National Association's Objections to Report and Recommendation as objections by both First Tennessee and Global.

# II.

The Court reviews *de novo* any part of the magistrate judge's R&R to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3). A reviewing court may accept, reject, or modify, in whole or part, the magistrate judge's recommended disposition. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

Summary judgment is proper where "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if the evidence, when viewed "in the light most favorable to the non-moving party," *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990), "is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). "Resolution of the instant matter through a grant of summary judgment is 'especially appropriate . . . because the construction of insurance contracts is a legal question well suited for resolution by the court.'" *W. Am. Ins. Co. v. Johns Bros., Inc.*, 435 F. Supp. 2d 511, 513–14 (E.D. Va. 2006) (quoting *Clark v. Metro. Life Ins. Co.*, 369 F. Supp. 2d 770, 774 (E.D. Va. 2005) (alteration in original)).

On cross motions for summary judgment, the court must review each motion separately on its own merits. *Rossignal v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003). The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion" and "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once the movant meets this initial burden, however, "the

nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.'" *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). "[A] complete failure of proof concerning an essential element of the [plaintiff's] case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2552. "A mere scintilla of evidence supporting his case is insufficient." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994) (citing *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510). Where the record taken as a whole cannot lead a rational trier of fact to find for the nonmoving party, no genuine issue exists for trial and summary judgment is appropriate. *Matushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

## III.

The issue in this case is whether the Policy obligates St Paul to defend and indemnify Global in the Underlying Litigation and against the Intervening Complaint. The parties agree that the duty to defend, if any, stems from First Tennessee's claims for negligence and breach of fiduciary duty. (R&R 9 n.4.)

"Under Virginia law, the duty to defend 'arises whenever the complaint [against the insured] alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy.'" *Bohreer v. Erie Ins. Group*, 475 F. Supp. 2d 578, 584 (E.D. Va. 2007) (quoting *Va. Elec. & Power Co. v. Northbrook Prop. & Cas. Ins. Co.*, 252 Va. 265, 268, 475 S.E.2d 264, 265 (1996)). On the other hand, "where it appears clear that the insurer would not be liable under the policy for any judgment based on the allegations in the underlying complaint, it has no duty . . . to defend." *Morrow Corp. v.*

*Harleysville Mut. Ins. Co.*, 101 F. Supp. 2d 422, 426 (E.D. Va. 2000). "[I]f there is no

duty to defend . . ., there can be no duty to indemnify." *Id.* at 427. "[T]he burden rests

on the insurer to establish the clear applicability of a particular exclusion from coverage."

*Fuisz v. Selective Ins. Co. of Am.*, 61 F.3d 238, 242 (4th Cir. 1995) (citing *Johnson v. Ins.*

*Co. of N. Am.*, 232 Va. 340, 345, 350 S.E.2d 616, 619 (1986)).

"To determine whether the allegations in the underlying lawsuit fall within the

scope of the policy terms," Virginia courts apply the Exclusive Pleading Rule and the

Potentiality Rule. *Bohreer*, 475 F. Supp. 2d at 584.

> Under the Exclusive Pleading Rule, an insurer's duty to defend is
> determined solely by the claims asserted against the insured in the
> underlying action. Under the Potentiality Rule, an insurer's duty to defend
> is triggered if there is any possibility that a judgment against the insured
> will be covered under the terms of the insured's policy.

*Transcon. Ins. Co. v. Caliber One Indem. Co.*, 367 F.Supp.2d 994, 1000–01 (E.D. Va.

2005) (internal citation omitted).

This combination of rules, commonly called the "Eight Corners Rule," requires

courts "'to compare the four corners of the insurance policy against the four corners of

the underlying complaint [to determine] if any allegations may potentially be covered by

the policy.'" *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 155 (4th

Cir. 2009) (quoting *CACI Int'l, Inc. v. St. Paul Fire & Marine Ins. Co.*, 567 F. Supp. 2d

824, 829 (E.D. Va. 2008)) (alteration in original).

The magistrate judge in this case applied the Eight Corners Rule to First

Tennessee's allegations in the Underlying Litigation and Intervening Complaint, and

concluded that "First Tennessee did not assert claims potentially covered by the Policy."

(R&R 9.) Specifically, she found that Global's "transfer of funds to F[MI] constituted an unauthorized act that deprived the owner of the use of its funds" within the plain and unambiguous meaning of the "Handling of funds" exclusion. (*Id.* at 11–12.) She reasoned:

> *Black's Law Dictionary* defines the term "unauthorized" to mean "[d]one without authority" or "made without actual, implied, or apparent authority." "Authority" is defined as: "The right or permission to act legally on another's behalf; esp., the power of one person to affect another's legal relations by acts done in accordance with the other's manifestations of assent; the power delegated by a principal to an agent . . . ." These definitions make clear that authorization to act on one's behalf requires *that person's* assent.

(*Id.* at 11–12 (internal citations omitted).)

Because First Tennessee alleged that Global had a duty to hold First Tennesee's funds in trust and to "distribute the funds *as directed upon closing*," and further alleged that the three anticipated FMI loans never closed, the magistrate judge found that the Global-FMI transfer, as alleged, was "unauthorized" within the meaning of the "Handling of funds" exclusion. (*Id.* at 12 (emphasis in original).) Accordingly, she concluded that St. Paul owed no duty to defend or indemnify Global in connection with the Underlying Litigation or Intervening Complaint. (*Id.*)

## A.

First Tennessee and Global (collectively, "Plaintiffs")[11] object to the magistrate judge's failure to account for the possibility that FMI "had apparent authority to act on behalf of First Tennessee . . ." (First Tennessee's Objections 3 [hereinafter First Tenn.

---

[11] Global is the Third-Party Plaintiff in this action. First Tennessee is the Intervening Plaintiff. The Court refers to these parties collectively as "Plaintiffs" for the sake of convenience.

Obj.].) Specifically, Plaintiffs contend that "[i]f FMI had apparent authority to act on behalf of First Tennessee and provided Global with instructions as to the escrow funds after the loans did not close, Global's conduct was not 'unauthorized' within the meaning of the Policy and thus not excluded from coverage." (*Id.*)

As an initial matter, this Court notes that Plaintiffs never presented this argument to the magistrate judge. Rather, Global advanced the separate and distinct argument that FMI, as borrower, owned the funds and therefore had *actual* authority to direct their disposition. (*See* Resp. Global Opp'n St. Paul Am. Mot. Summ. J. 11 ("As owner of the funds, F[MI] had the authority to direct the disposition of the funds. . .").) Plaintiffs can hardly be heard to complain about the magistrate's failure to address a theory that was never properly presented for her consideration.

In any event, the crux of Judge Lauck's analysis similarly applies to this new theory of defense. Under the Exclusive Pleading Rule, the duty to defend "'arises whenever *the complaint [against the insured]* alleges facts and circumstances, some of which would, if proved, fall within the risk covered by the policy.'" *Bohreer*, 475 F. Supp. 2d at 584 (emphasis added). In this case, First Tennessee alleged that Global, "[a]s agent," had a duty to hold First Tennessee's "funds in trust and then distribute the funds as directed upon closing." (Am. Compl. ¶¶ 6, 12, First Tenn. Bank Nat'l Ass'n v. Global Title, LLC, No. 3:09CV208 (E.D. Va. Nov. 23, 2009), ECF No. 58; *see also* Am. Intervening Compl. ¶¶ 6, 12.)

Neither of Plaintiffs' theories of defense comport with these allegations. As to Global's theory that FMI owned the funds, the contradiction is plain: First Tennessee's

case against Global is premised on the notion that the funds belonged to First Tennessee, not FMI.[12]

Plaintiffs' "apparent authority" defense similarly contravenes First Tennessee's allegations. Apparent authority is, by definition, "[a]uthority that a third party reasonably believes an agent has, based on the third party's dealings with the principal, even though the principal did not confer or intend to confer the authority." *Black's Law Dictionary* 152 (9th ed. 2009). "'Apparent authority' presupposes the existence of an agency relationship and concerns the authority of the agent." *Sanchez v. Medicorp Health Sys.*, 270 Va. 299, 304, 618 S.E.2d 331, 333 (2005). Accordingly, FMI could only have had apparent authority to direct the disbursement of First Tennessee's funds if FMI was First Tennessee's agent; Global was the third party; and, based on Global's dealings with First Tennessee, Global reasonably believed that FMI had authority to authorize distribution of the funds.

No such facts have been alleged by First Tennessee. To the contrary, First Tennessee specifically alleged that Global was the "closing agent," who "was to hold the funds in trust" until *after* the loans closed. (Am. Intervening Compl. ¶ 6; Am. Compl. ¶ 6, First Tenn. Bank Nat'l Ass'n v. Global Title, LLC, No. 3:09CV208 (E.D. Va. Nov. 13, 2009), ECF No. 58; *see also* Mem. Supp. Global's Mot. Summ. J. 8 (conceding it is "undisputed that [First Tennessee] has alleged damages arising from Global's

---

[12] Additionally, the magistrate judge correctly noted that the Mortgage Warehouse Loan and Security Agreement on which Global based its ownership argument cannot be considered by the Court because (1) the Eight Corners Rule precludes its consideration, and (2) it is unclear whether the agreement was even in effect when Global transferred the funds to FMI. (R&R 20, 20 n.10.)

performance in its capacity as title agent, closing agent, and escrow agent on the Transactions"); Mem. Supp. First Tennessee's Mot. Summ. J. 4 ("Based on First Tennessee's allegations in the Intervening Complaint, Global was the title agent on the Transactions . . . .").)

The difference is significant. If the parties were instead aligned as Plaintiffs now suggest, and if Global reasonably believed, based on its dealings with First Tennessee, that FMI had authority to direct the disbursement of funds prior to closing, First Tennessee would be estopped to deny that FMI had authority to direct the disbursement.[13] See Sanchez, 270 Va. at 304, 618 S.E.2d at 333 (explaining that in the case of apparent authority, "the principal is estopped to deny that the agent possessed the authority which he exercised"); see also Wright v. Shortridge, 194 Va. 346, 352–53, 73 S.E.2d 360, 364 (1952) (same). In other words, if FMI had apparent authority to direct the transfer, First Tennessee could not establish negligence or breach of fiduciary duty, and thus no judgment could be entered against Global that would fall within the Policy's coverage provisions.[14]

---

[13] It should be noted, however, that nothing before the Court suggests that Global could reasonably have believed FMI had authority to direct the transfer of funds prior to closing. Indeed, if FMI possessed the authority to order the disbursement prior to closing, Global's purpose as closing agent would be unclear.

[14] To the extent that St. Paul asks this Court to read "unauthorized" to include all acts for which actual authority is lacking, this Court cannot agree. "Unauthorized" is commonly defined to mean "made without . . . apparent authority." See Black's Law Dictionary 1663 (9th ed. 2009). St. Paul's reading of the term "unauthorized" would relieve St. Paul of the duty to defend even if, for example, St. Paul held out FMI as possessing authority. See id. This Court cannot adopt such a narrow reading of "authority" or such a broad reading of "unauthorized" absent definitions in the Policy to that effect. Nor does this Court believe that the magistrate judge intended to limit "authority" to actual authority when she remarked that "authorization to act on one's behalf require that person's assent." (R&R 12.) Rather, given Judge Lauck's explicit

Moreover, the Eight Corners Rules precludes this Court from considering the merits of Global's defenses. As the Supreme Court of Virginia has repeatedly stated, "only the allegations in the complaint and the provisions of the insurance policy are to be considered in deciding whether there is a duty on the part of the insurer to defend and indemnify the insured." *Copp v. Nationwide Mut. Ins. Co.*, 279 Va. 675, 683, 692 S.E.2d 220, 224 (2010) (citing *Brenner v. Lawyers Title Ins. Corp.*, 240 Va. 185, 189, 192, 397 S.E.2d 100, 102, 104 (1990); *Reisen v. Aetna Life & Cas. Co.*, 225 Va. 327, 331, 302 S.E.2d 529, 531 (1983); *Travelers Indem. Co. v. Obsenshain*, 219 Va. 44, 46, 245 S.E.2d 247, 249 (1978); *London Guar. & Accident Co. v. C.B. White & Bros., Inc.*, 188 Va. 195, 199–200, 49 S.E.2d 254, 256 (1948)). Whether Plaintiffs can conjure some set of facts other than those alleged that would trigger a duty to defend is beside the point. "[T]he only 'facts' at issue are the Policy's plain terms and the factual allegations asserted in the Lawsuit and the Intervening Complaint." (St. Paul's Mem. Supp. Mot. Summ. J. 8.)

The Supreme Court of Virginia's recent decision in *Copp v. Nationwide Mutual Insurance Co.*, 279 Va. 675, 692 S.E.2d 220 (2010), does not alter this conclusion. Plaintiffs suggest that, under *Copp*, the Court can look beyond the eight corners of the complaint and the Policy and consider Global's theory of defense. *Copp*, however, involved the unique situation "where in one of the four corners of [the] insurance policy

recognition that "unauthorized" conduct can include acts done or made without apparent authority, this Court reads the R&R as simply emphasizing that all authority—whether actual or apparent—must flow from the principal. *See Sanchez*, 270 Va. at 303–04, 618 S.E.2d at 333 (explaining that apparent authority is that "which the principal has held the agent out as possessing, or which he has permitted the agent to represent that he possesses"); *see also Black's Law Dictionary* 152 (explaining that apparent authority is "based on the third party's dealings with the principal"). To the extent that the R&R limits "authority" to actual authority, this Court disagrees.

there [wa]s a provision specifically stating that an exclusion 'does not apply'" under

certain circumstances. *Id.* at 683, 692 S.E.2d at 225. Specifically, the policy in that case

excluded coverage for "bodily injury or property damage intended or expected by the

insured," but further provided that the exclusion did "not apply to bodily injury or

property damage caused by an insured trying to protect person or property." *Id.* at 678,

692 S.E.2d at 222. Because the bodily injury alleged in that case could have been both

"intended" *and* in self defense, the court considered the insured's claim of self defense

when determining the insurer's duty to defend. *Id.* at 684, 692 S.E.2d at 225.

This case is not analogous. Once an act is found to be "unauthorized" within the

meaning of the "Handling of funds" exclusion, it cannot also be found "authorized." The

exclusion at issue here does not "itself create[] an exception" (*see* First Tenn. Obj. 5) like

the policy exclusion in *Copp*.[15]

In sum, this Court agrees with the magistrate judge that the conduct alleged in the

Underlying Litigation and Intervening Complaint is excluded from coverage under the

plain meaning of the "Handling of funds" provision.[16] Plaintiffs' first objection will be

overruled.

---

[15] *General Agents Insurance Co. of America v. King*, Chancery No. 97-753, 1998 WL 972250
(Va. Cir. Ct. June 23, 1998), is similarly distinguishable. Like *Copp*, the policy exclusion in that
case contained an exception for "bodily injury resulting from the use of reasonable force to
protect persons or property." *Id.* at *1–2.
[16] Global argues that:
> FMI authorized Global to wire the funds to FMI. In plain terms, Global did
> exactly what it was authorized by FMI to do. Although the Bank's position may
> be that Global should have acted under the authority of the Bank, not FMI, the
> policy exclusion does not draw such a distinction. Global's alleged conduct was
> "authorized," as that term is used in the Policy, and therefore neither of the first
> two portions of the exclusion applies.

**B.**

Plaintiffs next contend that the "Handling of funds" provision cannot be read to exclude coverage for the transfer alleged by First Tennessee, because this construction would render meaningless the Policy's insurance coverage for escrow services. (First Tenn. Obj. 5–6.)[17] This Court disagrees.

The Policy provides coverage to Global for services performed in the capacities of title agent, title searcher, abstracter, closing agent, and escrow agent. (Policy, at SP-00005.) Many of the services performed in these capacities—for example, "the preparation of title documents, searching title history, abstracting title, processing closing

_____

(Mem. Supp. Global's Mot. Summ. J. 10–11 (internal citation omitted).)
    As suggested by Global, *all* transfers made at the direction of *anyone* would be authorized. This would encompass every transfer other than those made by Global on its on accord—a reading that simply does not comport with the dictionary definition of "authority"— "[t]he right or permission to act legally on another's behalf; esp., the power of one person to affect another's legal relations by acts done in accordance with the other's manifestations of assent; [or] the power delegated by a principal to an agent. . . ." *See Black's Law Dictionary* 152. This Court cannot agree with Global's suggested "plain terms" reading of the term "authorized."
    For similar reasons, the Court is not persuaded by Plaintiffs' contention that "Global commenced an authorized task but negligently performed it." (Mem. Supp. First Tenn.'s Mot. Summ. J. 9–10.) Authority to return funds to a specific party is not and could not reasonably be understood as *carte blanche* authority to release funds.
[17] Global and First Tennessee cast this argument in slightly different terms in their motions for summary judgment. Global asserted that the term "unauthorized" is ambiguous, and "[a]n ambiguous term must be accorded the meaning that a reasonable person in the position of the insured would have given to the term and that is consistent with the reasonable expectations of a person in the insured's position." (Mem. Supp. Global's Mot. Summ. J. 12 (quoting *Morrow Corp. v. Harleysville Mut. Ins. Co.*, 110 F. Supp. 2d 441, 451–52 (E.D. Va. 2000)).) First Tennessee, on the other hand, contended that St. Paul's reading of the "Handling of funds" exclusion would "sweep away the very professional liability coverage that [Global] purchased." (Mem. Supp. First Tenn.'s Mot. Summ. J. 13 (quoting *Transcon. Ins. Co. v. Caliber One Indem. Co.*, 367 F. Supp. 2d 994, 1006 (E.D. Va. 2005)).) Whereas Global's "reasonable expectations" argument hinges upon finding that the policy is ambiguous, First Tennessee contends that its "illusory coverage" argument applies whether the policy is ambiguous or unambiguous. The difference is immaterial, however, because the "Handling of funds" exclusion does not eviscerate the insurance coverage purchased by Global.

15

documentation, ensuring proper execution and notarization, recording mortgages and other documents, and providing executed documents to proper parties—do not involve the handling of funds." (St. Paul's Resp. Mem. Opp'n Objections 7.)

As to the Policy's coverage for escrow services, the Policy defines "escrow agent" as "[a] person who receives any escrow for deposit or delivery. . ." (Policy, at SP-00022.) The Policy further defines "[e]scrow" to "include[] money, property, deeds, or bonds."[18] (*Id.*) The Policy therefore provides coverage for negligent acts, errors, or omissions occurring in the performance of escrow services beyond the handling funds.

In addition, the Policy provides coverage for "personal injury offenses," including libel; slander; disparagement of businesses, premises, products, services, work, or completed work; invasion of privacy; false arrest, detention, or imprisonment; malicious prosecution; and wrongful entry. (*Id.*) While some of these offenses may not likely occur in the performance of escrow services, this Court cannot agree with Plaintiffs' conclusory assertion that "these acts are highly unlikely to arise in the context of handling escrow funds." (First Tenn. Obj. 6.) Indeed, it is not difficult to imagine a case in which libel, slander, or disparagement could occur in connection with escrow services.

The breadth of the Policy's coverage and the comparatively narrow "Handling of funds" exclusion distinguish this case from *Transcontinental Insurance Co. v. Caliber One Indemnity Co.*, 367 F.Supp.2d 994 (E.D. Va. 2005). In that case, Virginia Sprinkler, a business in the field of fire suppression system installation, inspection, and repair,

---

[18] Global's assertion that the Policy defines escrow as "money"—and money alone—is misleading. (*See* Mem. Supp. Global's Mot. Summ. J. 12.)

purchased professional liability insurance for activities related to "Fire Suppression

System Repair, Installation, and Inspection." *Id.* at 996, 1006–07. The policy excluded

coverage for "any claim arising out of the ownership, rental, leasing, maintenance,

operation, use or repair of any real or personal property, including damage to property

owned, occupied, or used by or rented or leased to an insured." *Id.* at 1006.

When Virginia Sprinkler was sued for wrongful acts which allegedly lead to

premature corrosion of a fire-suppression sprinkler system, the insurer denied coverage

on the grounds that the claims alleged in the underlying litigation arose "out of the . . .

maintenance . . . or repair of . . . personal property"—namely, "Virginia Sprinkler's

maintenance of the fire suppression system . . . in the building." *Id.* Virginia Sprinkler

sought a declaratory judgment concerning the insurer's duty to defend. *See id.* at 996.

Because the exclusion explicitly voided coverage for "repair"—one of the three

activities covered by the policy—and implicitly "void[ed] coverage for the other two

designated activities as well, at least insofar as 'Installation[] and Inspection' fall within

the meanings of 'maintenance,' 'operation,' and 'use[,]'" the court found that "some

limiting construction" of the exclusion was necessary "to avoid the result that Virginia

Sprinkler in fact purchased no professional liability coverage whatsoever." *Id.* at 1007.

Unlike the policy provisions in *Transcontinental*, the "Handling of funds"

exclusion at issue here does not eviscerate the coverage bargained for by Global, as

explained above. Plaintiffs' second objection will therefore be overruled.[19]

---

[19] As previously noted, Global moved to adopt First Tennessee's Objections to the R&R. That
motion will be granted. The objections separately filed by Global fail for the same reasons

## IV. CONCLUSION

For the reasons stated above, this Court finds that St. Paul owes no duty to defend or indemnify Global in connection with the Underlying Litigation or Intervening Complaint. The R&R will be adopted; St. Paul's Motion for Summary Judgment will be granted; Global's Motion for Summary Judgment will be denied; and First Tennessee's motion for summary judgment will be denied.

An appropriate Order will accompany this Memorandum Opinion.

                                      /h-          /s/
                                      Henry E. Hudson
                                      United States District Judge


Date: Apr.l 24 2011
Richmond, VA

---

articulated above. The only point meriting separate attention by the Court is Global's repeated assertion that the issue is not whether Global "had authority to transfer the funds to FMI, but rather whether it owed a duty to the Bank to determine whether the Bank remained the lawful owner of the funds. . ." (Global's Objections ¶ 8; *see also id.* at ¶¶ 4, 10.) This Court disagrees. In determining whether St. Paul owes a duty to defend, the issue for this Court is precisely whether the facts alleged by First Tennessee constitute an "unauthorized act" within the meaning of the "Handling of funds" exclusion.